1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

GERTRUDE BERLIN ISKOWITZ, a
deceased elder adult by and through her
Successor-in-Interest, GARY ISKOWITZ,
and GARY ISKOWITZ, individually and
on behalf of all heirs,

11
12
13
14

                                        Plaintiffs,

15

v.

16

NORTHRIDGE SUBTENANT, LLC, dba
THE VILLAGE AT NORTHRIDGE;
SRG MANAGEMENT, LLC, dba
SENIOR RESOURCE GROUP; SRG
SERVCO MANAGEMENT, LLC; and
DOES 1-250, inclusive,

17
18
19
20

                                        Defendants.

Case No.:  21-cv-1108-GPC-MDD

**ORDER:**

**(1) GRANTING DEFENDANTS'
REQUEST FOR JUDICIAL NOTICE;**

**(2) GRANTING PLAINTIFFS'
MOTION TO REMAND; AND**

**(3) GRANTING IN PART
PLAINTIFFS' MOTION FOR
ATTORNEY'S FEES**


**[ECF Nos. 4, 5, 6, 10]**

21
22

        Before the Court are Plaintiffs' Motion to Remand the instant case to state court,

23

and their related motion for attorneys' fees.  ECF Nos. 5, 6.  Defendants opposed

24

Plaintiffs' motions.  ECF No. 9.  Also before the Court are Defendants' requests for

25

judicial notice, ECF Nos. 4 and 10, and Plaintiffs' opposition to the ECF No. 4 request,

26

ECF No. 7.

27
28

For the reasons set forth below, the Court **GRANTS** Defendants' requests for judicial notice**, GRANTS** Plaintiffs' motion to remand, and **GRANTS IN PART** Plaintiffs' motion for attorneys' fees.

I.      **BACKGROUND**

      a.      **Plaintiffs' Complaint**

On May 10, 2021, Plaintiffs Gertrude Berlin Iskowitz, a deceased elder adult by and through her Successor-in-Interest, Gary Iskowitz, Gary Iskowitz, individually and on behalf of all heirs ("Plaintiffs") filed their complaint in the Superior Court of the State of California, County of San Diego.[1]  ECF No. 1, Defs.' Notice of Removal at 2; ECF No. 1-3, Pls.' Compl. at 1.[2]  Plaintiffs' complaint alleges several causes of action under California state law, including elder abuse/neglect (*id.* ¶¶ 102-13), physical abuse (*id.* ¶¶ 114-23), and wrongful death (*id.* ¶¶ 146-52), in violation of Welfare and Institutions Code §§ 15600 et seq., as well as financial abuse and fraud under California's Business and Professions Code (§ 17200 et seq.) (*id.* ¶¶ 137-45), and state-law negligence (*id.* ¶¶ 124-26).

      b.      **Defendants' Removal to Federal Court**

On June 11, 2021, Defendants Northridge Subtenant, LLC, doing business as The Village at Northridge, SRG Management, LLC, doing business as Senior Resource Group, SRG Servco Management, LLC and Does 1-250 ("Defendants"), removed the case to federal court on the basis that the Court "has original jurisdiction under 28 U.S.C. §§ 1331 and 1442(a) and the case is one that may be removed to this Court pursuant to 28

---

[1] The Superior Court of California, County of San Diego case number is 37-2021-00020709-CU-PO-CTL.

[2] All citations to the record are based upon the pagination generated by the CM/ECF system.

U.S.C. §§ 1441 and 1446 based on federal question and federal officer jurisdiction." *Id.* at 3.

In removing Plaintiffs' action to federal court, Defendants asserted this Court has original jurisdiction over this case because the conduct Plaintiffs allege as the basis for Defendants' liability is immunized under the Public Readiness and Emergency Preparedness Act ("PREP Act") (42 U.S.C. § 247d-6d).[3]  ECF No. 1, Defs.' Notice of Removal, ¶¶ 5-12.  At bottom, Defendants have argued that they are covered by the PREP Act, that their conduct qualifies as "covered countermeasures" during a national public health emergency, that they qualify as federal officers and can assert a colorable federal defense, and, therefore, Plaintiffs' claims are exclusively the jurisdiction of federal courts and preempted by the immunity conferred by the PREP Act.  *See id.*

---

[3]     The PREP Act (provides in pertinent part: "A covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to or the use by an individual of a covered countermeasure if a declaration [by the Secretary of Health and Human Services] has been issued with respect to such countermeasure." 42 U.S.C. § 247d-6d(a)(1).

Further, the statute defines "covered countermeasures" as:

(**A**) a qualified pandemic or epidemic product (as defined in paragraph (7));

(**B**) a security countermeasure (as defined in section 247d–6b(c)(1)(B) of this title);

(**C**) a drug (as such term is defined in section 201(g)(1) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 321(g)(1)), biological product (as such term is defined by section 262(i) of this title), or device (as such term is defined by section 201(h) of the Federal Food, Drug and Cosmetic Act (21 U.S.C. 321(h)) that is authorized for emergency use in accordance with section 564, 564A, or 564B of the Federal Food, Drug, and Cosmetic Act [21 U.S.C. 360bbb–3, 360bbb–3a, 360bbb–3b]; or

(**D**) a respiratory protective device that is approved by the National Institute for Occupational Safety and Health under part 84 of title 42, Code of Federal Regulations (or any successor regulations), and that the Secretary determines to be a priority for use during a public health emergency declared under section 247d of this title. 42 U.S.C. § 247d-6d(i)(1).

### c.     Plaintiffs' Motion to Remand

On July 13, 2021, Plaintiffs filed the instant motion asking the Court to remand their case to the state court.  ECF No. 5.  In their motion to remand, Plaintiffs contend that the complaint filed in state court presented no federal question because Plaintiff Gertrude Iskowitz "neither suffered from nor died from COVID, so the PREP Act is inapplicable."  ECF No. 5, Pls.' Mot. p. 22.  Further, Plaintiffs assert that their claims do not allege Defendants used "covered countermeasures" for the purpose of PREP Act, *id.* at 22-23, nor are Defendants themselves "covered person[s]" under the Act, *id.* at 23. Next, Plaintiffs argue Defendants are not "federal officers" under 42 U.S.C. § 1442(a)(1), so they are not entitled to federal officer removal.  *Id.* at 24-25 (citing *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018) ("For a private entity to be 'acting under' a federal officer, the entity must be involved in 'an effort to assist, or to help carry out, the duties or tasks of the federal superior.'"").  And finally, Plaintiffs contend Defendants cannot establish a causal connection between Defendants' conduct, any official federal duty under the PREP Act, and Ms. Iskowitz's death—primarily because Plaintiffs claim Ms. Iskowitz did not contract, and did not die from, COVID-19, ECF No. 5, Pls.' Mot. at 26-27 & nn. 8-9.

In their opposition, Defendants argue that Plaintiffs in their original State complaint, *did* claim that Defendants' administration of covered countermeasures caused Ms. Iskowitz to contract the COVID-19 virus, which caused her death.  ECF No. 9 at 9. Defendants wrote, "[i]n short, this case is about the decisions that Defendants made during the pandemic while caring for Ms. Iskowitz and the manner in which it administered countermeasure[s] and other precautions in their efforts to prevent and mitigate the spread of COVID-19."  *Id.*  Accordingly, complete preemption requires litigation of the case in federal court.  In the alternative, Defendants argue that the state

4

claims require interpretation of the PREP Act and "arise under federal law." ECF No. 9 25-27, and that their actions were at the direction of a "federal officer".  *Id.* at 27-28.

### d.  Requests for Judicial Notice

At the time Defendants removed the case to the district court, and in response to the Plaintiff's motion to remand, Defendants requested the Court to take judicial notice of numerous exhibits consisting of documents related to the Department of Health and Human Services ("HHS") Secretary's Declarations and Amended Declarations, the HHS Office of General Counsel's Advisory Opinions regarding the declarations, and documents produced by the Center for Disease Control ("CDC"), California Department of Public Health, and the Centers for Medicare and Medicaid Services ("CMS"), among others.  ECF Nos. 4, 10.  Plaintiffs opposed the request.  ECF No. 7.

Under Federal Rule of Evidence 201, the court "may judicially notice a fact that is not subject to reasonable dispute" when such facts are "accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(1)-(2).  "[Under] Rule 201, the court can take judicial notice of 'public records and government documents available from reliable sources on the internet' such as websites run by government agencies."  *U.S. ex rel. Modglin v. DJO Global Inc.*, 48 F. Supp.3d 1362, 1381 (C.D. Cal. 2014).  However, the facts which may be judicially noticed must be adjudicative, not legislative, in nature.  Adjudicative facts "normally go to the jury in a case" and directly relate to "the parties, their activities, their properties, [and] their businesses."  *Qualley v. Clo-Tex International, Inc*., 212 F.3d 1123, 1128 (8th Cir. 2000).  Legislative facts, by contrast, "are established truths, facts or pronouncements that do not change from case to case but apply universally."  *United States v. Gould*, 536 F.2d 216, 220 (8th Cir. 1976).  Further, judicially noticed evidence must be relevant.  *See United States v. Click*, 807 F.2d 847 (9th Cir. 1987).

Plaintiffs contend that these rules preclude the Court from taking judicial notice of the exhibits to which Defendants direct the Court's attention (apart from Exhibit 1, which is a copy of Plaintiffs' state-court complaint). ECF No. 7 at 4. Plaintiffs primarily argue that because Ms. Iskowitz did not have COVID-19, these exhibits are not relevant in the instant case.

The Court disagrees and finds that the exhibits contained in Defendants' RJN are relevant to this case given the references to COVID-19 in the operative complaint. Specifically, the advisory opinions to which Defendants cite in their opposition to Plaintiffs' motion to remand address the interaction between HHS actions and policies throughout the COVID-19 pandemic, and a plaintiff's ability to sue a residential care or assisted living facility for allegedly tortious conduct. *See* ECF No. 4, Defs.' RJN, Ex. 9 (HHS Advisory Opinion 21-01). The Court finds the documents in the RJN contain adjudicative facts which are relevant and helpful in deciding the issues in this case. Accordingly, the Court **GRANTS** Defendants' requests for judicial notice.

## II.   LEGAL STANDARD

Pursuant to 28 U.S.C. § 1441(a), a defendant may remove to federal court a claim filed in state court that could have initially been brought in federal court. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). As federal courts have limited jurisdiction, they are presumed to lack jurisdiction unless the contrary is established. *Gen. Atomic Co. v. United Nuclear Corp.*, 655 F.2d 968, 968–69 (9th Cir. 1981). Further, there is a presumption against removal, and the party invoking the removal statute has the burden of establishing federal jurisdiction. *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 12 44 (9th Cir. 2009). The removal statute is construed narrowly with doubts construed against removal. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107–09 (1941).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

A motion to remand is the proper procedure to challenge removal of an action to federal court.  28 U.S.C. § 1447(c).  The Ninth Circuit has observed that a plaintiff's challenge to removal jurisdiction is "the functional equivalent of a defendant's motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1)," and concluded the question "should be resolved within this same framework."  *Leite v. Crane Co.*, 749 F.3d 1117, 1121-22 (9th Cir. 2014).

With the Rule 12(b)(1) framework in mind, a federal jurisdiction challenge may be brought in two ways: a facial attack or a factual attack.  *Id.* at 1121.  "A 'facial' attack accepts the truth of the plaintiff's allegations but asserts that they are 'insufficient on their face to invoke federal jurisdiction.'"  *Id.* (citing *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004)).  And the district court would resolve such an attack by accepting the plaintiff's allegations as true, drawing all reasonable inferences in the plaintiff's favor, and determining whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction.  *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013).

A factual attack "contests the truth of the plaintiff's factual allegations," *Leite*, 749 F.3d at 1121, and "the plaintiff must support her jurisdictional challenges with 'competent proof,'" *id.* (citing *Hertz Corp. v. Friend*, 559 U.S. 77, 96-97 (2010), under the same standard that governs summary judgment, *Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (en banc).  So too in the removal context: When a plaintiff raises a factual attack, a defendant must "support its allegations with competent proof."  *Leite*, 749 F.3d at 1122.  This burden requires a defendant to prove by a preponderance of the evidence that "the colorable federal defense and causal nexus requirements for removal jurisdiction have been met."  *Id.* (citing *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004)).

/ / /

/ / /

## III.   DISCUSSION

### a.   Subject Matter Jurisdiction Under 28 U.S.C. § 1331

"Removal based on federal-question jurisdiction is reviewed under the longstanding well-pleaded complaint rule." *Hansen v. Grp. Health Coop.*, 902 F.3d 1051, 1057 (9th Cir. 2018).  Under the well-pleaded complaint rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2003) (quoting *Caterpillar*, 482 U.S. at 392); *see also Gully v. First Nat'l Bank*, 299 U.S. 109, 113 (1936).

Under § 1331, a defendant may not remove a case to federal court unless the plaintiff's complaint establishes that the case "arises under" federal law.  *Dennis v. Hart*, 724 F.3d 1249, 1252 (9th Cir. 2013).  And the federal question "must be disclosed on the face of the complaint, unaided by the answer or by the petition for removal." *Dynegy*, 375 F.3d at 838 (quoting *Gully* 299 U.S. 109 at 113).

Defendants argue that Plaintiffs' claims fall under the PREP Act and are subject to complete preemption because "each cause of action in the Complaint is based on Plaintiffs' underlying theory that Defendants failed to exercise ordinary care to keep the premises and residents safe by not providing, administering, and distributing sufficient PPE and other countermeasures in its efforts to prevent and mitigate the spread of COVID-19 at the facility."  ECF No. 1 at 15; ECF No. 9 at 17.  Plaintiffs counter that their state-court complaint is based wholly on state-law causes of action and none of the state claims includes elements which depend on application of federal law.

Because federal jurisdiction "depends solely on the plaintiff's claims for relief and not on anticipated defenses to those claims," *ARCO Envtl. Remediation, L.L.C. v. Dep't of Health & Envtl. Quality of Mont.*, 213 F.3d 1108, 1113 (9th Cir. 2000), "a case may not be removed to federal court on the basis of a federal defense, including the defense of

8

preemption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue," *Caterpillar Inc. v. Williams*, 482 U.S. 386, 393 (1987); *Marin Gen. Hosp. v. Modesto & Empire Traction Co*., 581 F.3d at 945 ("The general rule is that a defense of federal preemption of a state-law claim. . . is an insufficient basis for original federal question jurisdiction. . . .").

Here, the Plaintiff's complaint is not founded on the PREP Act or any other federal cause of action. As the masters of their claims, Plaintiffs have confined themselves to state-law based causes of action. Even if some of the claims implicate or are preempted by federal law through an affirmative defense, such defenses do not appear on the face of the well-pleaded complaint. *See Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63 (1987) ("Federal pre-emption is ordinarily a federal defense to the plaintiff's suit. As a defense, it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court."). The fact that the PREP Act affords immunity to the defendants and otherwise provides a preemption defense does not create the basis for federal jurisdiction.

## 1. Complete Preemption

### A. The PREP Act is not a complete preemption statute.

While a defense of preemption will not provide federal jurisdiction, complete preemption as a basis for federal question removal jurisdiction under 28 U.S.C. § 1441(a) can. Complete preemption is a limited doctrine that applies only where a federal statutory scheme is so comprehensive that it entirely supplants state law causes of action. In removing Plaintiff's case to federal court, Defendants argued the PREP Act provides for complete preemption, so Plaintiff's claims were properly removed to this Court. ECF No. 1, Defs.' Not. of Removal, at 4.

Complete preemption is an exception to the well-pleaded complaint rule. *Lyons v. Cucumber Holdings, LLC,* 520 F. Supp. 3d 1277, 1284 (C.D. Cal. 2021). While a defense of preemption will *not* provide federal jurisdiction, complete preemption conferred by federal statute can. A claim that is, on its face, a state-law claim can be considered to arise under federal law if "Congress intended the scope of federal law to be so broad as to entirely replace any state-law claim." *Dennis v. Hart*, 724 F.3d 1249, 1254 (9th Cir. 2013). Complete preemption is "really a jurisdictional rather than a preemption doctrine, as it confers exclusive federal jurisdiction in certain instances where Congress intended the scope of a federal law to be so broad as to entirely replace any state-law claim." *Marin Gen. Hosp*., 581 F.3d at 945 (quoting *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir.2008)) (alterations omitted).

Complete preemption that confers federal question jurisdiction is extremely rare. *Hansen*, 902 F.3d at 1057. The limited doctrine applies only where a federal statutory scheme is so comprehensive that it entirely supplants state law causes of action. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). The Supreme Court has found complete preemption applies in only three contexts: the Labor Management Relations Act, the Employee Retirement Income Security Act, and the National Bank Act. *See City of Oakland v. BP PLC*, 969 F.3d 895, 905 (9th Cir. 2020). The Ninth Circuit has held that "complete preemption for purposes of federal jurisdiction under Section 1331 exists when Congress: (1) intended to displace a state-law cause of action, and (2) provided a substitute cause of action." *City of Oakland*, 969 F.3d at 906.

Here, Defendants have failed to demonstrate that the PREP Act was intended to entirely replace a state-law. *Cf. Ebony Stone v. Long Beach Healthcare Center, LLC*, 21-cv-326, 2021 WL 1163572, at *5 (C.D. Cal. Mar. 26, 2021) ("the PREP Act does not completely replace state law claims related to COVID-19."); *accord, Martin v. Serrano*

1    *Post Acute LLC*, CV 20-5937 DSF (SKx), 2020 WL 5422949, at *2 (C.D. Cal. Sept. 10,

2    2020); *Lyons v. Cucumber Holdings, LLC*, 520 F. Supp. 3d 1277, 1286 (C.D. Cal. 2021)

3    (finding that the PREP Act is "not the 'rare' statute where complete preemption applies"

4    because it "does not fully replace state law claims related to Covid-19"); *Saldana v.*

5    *Glenhaven Healthcare LLC*, CV 20-5631 FMO (MAAX), 2020 WL 6713995 (C.D. Cal.

6    Oct. 14, 2020).

7            Defendants invoke *Garcia v. Welltower Opco Grp. LLC*, 522 F. Supp. 3d 734

8    (C.D. Cal. 2021), for the proposition that the PREP Act is a complete preemption statute.

9    ECF No. 9, Defs.' Opp. at 11.  The *Garcia* court was persuaded by the HHS Secretary's

10   Office of the General Counsel ("OGC") Advisory Opinion 21-01 that the PREP Act

11   provided complete preemption. *Id.* at 742.  It further applied *Chevron* deference to the

12   administrative agency interpretation of the PREP Act. *Id.*  Meanwhile, the court in

13   *Dupervil* arrived at the contrary conclusion observing that "[e]ven assuming that

14   Congress intended to delegate authority to the [HHS] Secretary and HHS's Office of the

15   General Counsel 'generally to make rules carrying the force of the law,' the Office of the

16   General Counsel interpretation relied upon by Defendants here explicitly was not

17   'promulgated in the exercise of that authority' and is not entitled to *Chevron* deference".

18   *Dupervil*, 516 F.3d at 1314; *see also U.S. v. Mead Corp.*, 533 U.S. 218, 226-27 (2001)

19   (declining to confer *Chevron* deference where an agency's rule was not "promulgated in

20   the exercise of" authority delegated by Congress).  The Congressional Research Service's

21   analysis of the OGC advisory opinions (which of course, do not bind this Court or any

22   other) specifically states that while "they may inform the judicial interpretation of the

23   PREP Act if courts find their reasoning persuasive," such opinions are "nonbinding and

24   lack the force of law." Congressional Research Service, "The PREP Act and COVID-19:

25   Limiting Liability for Medical Countermeasures,"

26

27

28

https://crsreports.congress.gov/product/pdf/LSB/LSB10443.  Accordingly, the Court holds that Advisory Opinion 21-01 is not entitled to *Chevron* deference.

Advisory Opinion 21-01 also opines that the PREP Act "is a 'complete preemption' statute" because it establishes "a federal cause of action, administrative or judicial, as the only viable claim." ECF No. 17-2, Advisory Opinion 21-01 at 2 (emphasis added).) Interpretations contained in formats such as opinion letters are "entitled to respect" under *Skidmore v. Swift & Co*., 323 U.S. 134, 140 (1944), but only to the extent that those interpretations have the "power to persuade".  Advisory Opinion 21-01 lacks such power to persuade given that the Advisory Opinion cites no cases for its proposition that an exclusive federal administrative remedy is sufficient for complete preemption. *See* ECF No. 17-2, Advisory Opinion 21-01 at 2.

In addition, Defendants have failed to demonstrate there is an alternative federal cause of action provided by the PREP Act. Defendants analogize the PREP Act to the Air Transportation Safety and System Stabilization Act of 2001 ("ATSSSA"), which was passed in the wake of the September 11 attacks.  ECF No. 9 at 12.  But in doing so, Defendants essentially ignore the key component of the ATSSSA that makes it a complete preemption statute—unlike the PREP Act, the ATSSSA includes an alternative, exclusive federal cause of action.[4]  The PREP Act does not provide a similar federal cause or right of action because "the PREP ACT is an immunity statute that simply limits the causes of action for claims falling within its ambit" and only allows claims for "willful misconduct" in federal court in the District of the District of Columbia.  *See* 42

---

[4] ATSSSA § 408(b)(1) provides in pertinent part: "There shall exist a Federal cause of action for damages arising out of the hijacking and subsequent crashes of American Airlines flights 11 and 77, and United Airlines flights 93 and 175, on September 11, 2001…[T]his cause of action shall be the exclusive remedy for damages arising from the hijacking and subsequent crashes of such flights."

U.S.C. §§247d-6d(a), 247d-6d(1), 247d-6d(e)(1).  Defendants' analogies to the Labor Management Relations Act and the National Bank Act are no more persuasive for the same reason.  ECF No. 9 at 13.  Each of these statutes created a federal cause of action and conferred exclusive federal jurisdiction.  Given those false analogies, the PREP Act has not acted to supplant state-law tort claims like the ones Plaintiffs have alleged.

Further, a number of courts that have analyzed the PREP Act, have concluded that it does not provide a substitute cause of action for the claims raised by the Plaintiffs. *Ebony Stone*, 2021 WL 1163572, at *5 (PREP Act does not provide a substitute cause of action for Plaintiff's claims based on Defendant's alleged negligence claims); *Dupervil v. Alliance Health Operations, LLC*, 516 F. Supp. 3d 238, 252 (E.D.N.Y. 2021) (except for one narrow exception, PREP Act claims cannot be brought in federal court); *Winn v. California Post Acute LLC*, 532 F. Supp. 3d 892, 899 (C.D. Cal. 2021), reconsideration denied, No. CV 21-2854 PA (MARX), 2021 WL 4780571 (C.D. Cal. June 14, 2021).

In sum, the Court finds that the PREP Act does not meet the requirements for a complete preemption statute because there is no evidence that Congress intended to displace state law claims, and they did not provide a federal cause of action to replace the state-law equivalents.

### B.    Plaintiffs' claims do not implicate "covered countermeasures."

Even assuming the January 8, 2021 OGC opinion addressing complete preemption is owed deference, "before complete preemption can apply to a plaintiff's state law claims, the 'claims at issue must fall within the scope of the relevant federal statute.'" *Lyons*, 520 F. Supp. at 1285 (citation omitted).  Accordingly, the Court must therefore assess whether Plaintiff's claims allege conduct covered by the PREP Act.

Here, Defendants rely on stray and vague references to COVID-19 to support their contention that "each cause of action in the Complaint is based on Plaintiffs' underlying theory that Defendants failed to exercise ordinary care to keep the premises and residents

safe by not providing, administering, and distributing sufficient PPE and other countermeasures in its efforts to prevent and mitigate the spread of COVID-19 at the facility."  ECF No. 1 at 15.  Defendants' contentions rely on the following references and language in Plaintiff's complaint:

- "GERT apparently contracted COVID 9 while under the exclusive control of THE VILLAGE."  ECF No. 1-3 ¶ 42.

- "On January 1, 2021, GERT was receiving Albuterol Inhaler treatments every 4 hours to treater her ongoing respiratory issues." *Id.* ¶ 46.

- "To THE VILLAGE's dismay, GERT survived her COVID 19 (if she ever actually contracted the condition." *Id.* ¶ 48.

- Alleged understaffing as it related to Defendants' inability to care for Ms. Iskowitz. *Id.* ¶¶ 97-99.

Defendants interpret this language to assert that Plaintiffs' claims are based upon Defendants' use or nonuse of covered countermeasures, conduct which AO-21 opined was completely preempted.  ECF No. 4, Defs.' Req. for Judicial Notice (Ex. 9).  Beyond stray allegations that purportedly involve COVID-19 countermeasures, the state complaint primarily focuses on unsanitary conditions in Ms. Iskowitz's room including cockroach (ECF No. 1-3, Pls.' Compl. ¶¶ 25, 72-77) and mosquito (*id.* ¶¶ 35-36,) infestations, along with mold which exacerbated her preexisting respiratory condition (*id.* ¶ 25, 78-81). There are also allegations about financial and the allegedly life-threatening administration of strong pain and anti-anxiety medications which were entirely unrelated to any treatment for COVID-19 (*id.* ¶¶ 50-64).

A growing number of federal courts have declined to extend PREP Act immunity in cases that far more directly implicate COVID-19 than Plaintiffs' claims do here.  For example, in *Dupervil*, the plaintiff claimed his father died because the defendants failed to adequately implement countermeasures like enforcing social-distancing, requiring

14

mask-wearing, and screening residents and staff, 516 F. Supp. at 255.  There, the district court found, even considering the January AO-21, "[t]hese alleged failures cannot be said to be administering—or even prioritizing or purposefully allocating—a drug, biological product, or device to an individual within the meaning of the PREP Act such that Plaintiffs' claims are completely preempted." *Id.*  Indeed, even in cases where plaintiffs have brought state-law claims "for failure to protect against COVID-19" there is a growing consensus among federal courts that these claims are still "not properly characterized as federal law claims under the PREP Act."  *Dupervil*, 516 F. Supp. 3d at 255 (E.D.N.Y. 2021); *see id.* (collecting cases); *see also Anson v. HCP Prairie Vill. KS OpCo LLC*, No. 20-CV-2346 (DDC) (JPO), 2021 WL 308156, at *9-11 (D. Kan. Jan. 29, 2021).

The Court finds that Plaintiffs' complaint does not allege conduct for which Defendants are entitled to the PREP Act's immunity.  Certainly, it is not the case that "each cause of action . . . is based on Plaintiffs' underlying theory" about Defendants' failure to use of such countermeasures.  *See* ECF No. 1 at 15.   And Defendants rely on references to COVID-19 that are too tenuous for the Court to reasonably that the PREP Act's covered countermeasures apply to the conduct Plaintiffs have alleged in the complaint.

### C.    *Grable* Analysis

Defendants also argue that under *Grable & Sons Metal products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005)*,* the PREP Act presents a substantial, imbedded question of federal law.  ECF No. 9, Defs.' Opp. at 26-27.  *Grable* held that "in certain cases federal-question jurisdiction will lie over state-law claims that implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg*., 545 U.S. 308, 312 (2005). This exception to the well-pleaded complaint rule applies to "a special and small category of cases," where "a federal issue is: (1) necessarily raised, (2) actually

disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (internal quotation marks and citations omitted).

The Court finds that Defendants have not satisfied their burden in demonstrating this case requires federal jurisdiction under *Grable*.  The crux of Defendants' *Grable* argument is that COVID-19 is an "unprecedented pandemic" which requires consistent answers to questions facing our nation's institutions.  But Defendants' argument once again relies on an interpretation of the PREP Act to which the Court cannot subscribe. The conduct that is alleged in Plaintiff's complaint predominately has little to nothing to do with COVID-19.  Indeed, where Plaintiffs *do* mention COVID-19 in the complaint, there is a serious question as to whether it is mentioned hypothetically, or whether it is an actual assertion that Defendants' conduct.  *See, e.g.*, ECF No. 1-3, Pls.' Compl. ¶ 46. Second, the Court finds that Defendants' arguments about the importance of this issue to federal law is unpersuasive.  It is *not* the case that Defendants are genuinely asking for a federal forum to adjudicate the claims Plaintiffs allege for the purposes of uniform guidance to our nation's residential care facilities.  Again, unlike the ATSSSA, which funneled all claims related to the September 11 attacks to one jurisdiction for adjudication, the PREP Act is a statute that confers complete immunity to the persons and activities that it actually covers.  Defendants ask this court to maintain jurisdiction in federal court so that Plaintiff's claims—which span several years before the pandemic began in February 2020 and involve conduct completely unrelated to the virus—would be nullified entirely.

Defendants have argued that the Court would not disturb the balance of state and federal power because "[t]he issues under the PREP Act are not issues that Congress intended to be decided at the state court level."  ECF No. 9, Defs.' Opp. at 27.  The Court finds the opposite to be true.  Contrary to Defendants' view, *maintaining* federal

21-cv-1108-GPC-MDD

jurisdiction over Plaintiffs' claims would upset the balance of power between Congress and the states. Plaintiffs' claims alleging neglect, physical and financial abuse, elder abuse, and wrongful death are squarely within the ambit of each individual state's traditional police powers providing for the general welfare of its citizens. *See* U.S. Const. Amend. X. Defendants' proposition is untenable: for the Court to maintain federal jurisdiction based on an AO interpretation of federal law (not promulgated by Congress), sweep Defendants' conduct into the definition of covered countermeasures, apply broad immunity under the PREP Act, and thereby nullify Plaintiff's claims, would seriously "disturb" the balance of "federal and state judicial responsibilities" approved by Congress.

Ultimately, if Defendants believe they are entitled to PREP Act immunity and that Plaintiff's state-law claims are barred by the Act, they are entitled to file a demurrer in state court stating as much. *Cf. Martin*, 2021 WL 542249, at *3.

**b.    Federal Officer Removal under 28 U.S.C. § 1442(a)**

Finally, Defendants argue that removal to federal court was proper under 28 U.S.C. §1442(a) because Defendants were acting "pursuant to a federal officer's directions." ECF No. 9 at 27-33. Federal officer removal is proper under section 1442(a) if Defendants could establish that: (1) Defendants are persons, (2) Defendants are acting under the direction of a federal officer when it engaged in the allegedly tortious conduct; (3) there is a causal nexus between the Plaintiff's claims and the Defendants' actions under federal direction; (4) Defendants have raised a colorable defense based on federal law. *Goncalves v. Rady Children's Hosp.*, 865 F. 3d 1237, 1244 (9th Cir. 2017).

Here, Defendants have failed to establish that they are entitled to federal officer removal. They were not "acting under" a federal official simply by following the advice, guidance, and regulations (to which residential care facilities like Defendants are ordinarily subject in a non-pandemic context in order to maintain licensing) dictated by

1    HHS, the Center for Medicaid and Medicare Services ("CMS"), and the Center for

2    Disease Control ("CDC").  While care facilities were considered "critical infrastructure"

3    and promulgated regulations and guidance were increasingly specific as public health

4    officials learned more about the virus and how to mitigate the spread, the Court

5    concludes that Defendants have failed to show that their conduct rises to the level of

6    "carry[ing] out" the duties or tasks of a federal supervisor."  *Cf Watson v. Philip Morris*

7    *Cos.*, 551 U.S. 142, 152 (2007).

8    **IV.    PLAINTIFFS' MOTION FOR ATTORNEYS' FEES**

9            Given the Court's conclusion that removal was not proper, and that the case should

10   be remanded to state court, the Court must consider Plaintiffs' motion for attorney's fees,

11   ECF No. 6.  Pursuant to 28 U.S.C.A. § 1447(c), an order remanding a case may require

12   payment just costs and expenses (including attorney's fees) incurred by the party whose

13   case was removed and subsequently remanded.  The decision whether to award fees is

14   within the district court's discretion.  *Martin v. Franklin Capital Corporation*, 546 U.S.

15   122, 136-37 (2005).  In the context of removal, the awarding of attorney's fees is based

16   on whether the court finds the removal was reasonable, considering the goals of

17   discouraging removals that intend to increase litigation costs.  *Gardner v. UICI*, 503 F.3d

18   559, 561 (9th Cir. 2007).  Plaintiffs need not prove the removal was pursued in bad

19   faith—attorney's fees may also be awarded when it seems the removal was clearly

20   improper, or where the lack of jurisdiction would have been clear with minimal diligence.

21   *Gibson v. Chrysler Corp.*, 261 F. 3d 927, 950 (9th Cir. 2001).

22           The Court agrees with Plaintiffs that Defendants' Notice of Removal failed to

23   demonstrate the factual basis for the removal.  See ECF No. 6 at 4.  Defendants'

24   descriptions and characterizations of Plaintiffs' complaint barely engaged with the facts

25   and allegations therein, and instead devoted most of their efforts to making sweeping

26   statements about the PREP Act, and all of Defendants' conduct is a covered

27

28

countermeasure.  However, because there have been district court cases which have decided these motions in favor of both plaintiffs and defendants, and the Ninth Circuit has not yet ruled on the intertwined issues of PREP Act immunity, preemption, and covered countermeasures in the context of the COVID-19 pandemic, the Court is not prepared to say that the removal was, generally, unreasonable.[5]  That said, Defendants' representations in the briefing, as well as their failure to produce a positive COVID test for Ms. Iskowitz (which the Court still does not yet have) to Plaintiffs until the night before the October 22, 2021 hearing on this matter suggests there was some degree of negligence that caused Plaintiffs and this Court to expend additional resources on the instant motion.

Plaintiffs seek $39, 672.50 in attorney's fees to compensate the work required to oppose Defendants' removal of this case to federal court.  ECF No. 6 at 9.  For the foregoing reasons, the Court is prepared to award Plaintiffs attorney's fees in the interest of justice in the amount of $20,000.00 in connection with their motion to remand.

**IV.   CONCLUSION**

For the foregoing reasons, the Court **GRANTS** Defendants' request for judicial notice, **GRANTS** Plaintiffs' motion to remand, and **GRANTS IN PART** Plaintiffs' motion for attorneys' fees.

**IT IS SO ORDERED.**

Dated:  December 8, 2021

Hon. Gonzalo P. Curiel
United States District Judge

---

[5] The Ninth Circuit held argument on Thursday, October 21, 2021 in two consolidated cases that presented these questions in *Saldana v. Glenhaven Healthcare LLC*, 20-56194, and *Martin v. Serrano Post Acute LLC*, 20-56078.

19